IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

FELICIA BROWN,                                    Case No. 15-CV-843-PP

              Plaintiff,

v.

WISCONSIN DEPARTMENT OF CORRECTIONS and
SUSAN NYGREN,

              Defendants.

---

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 27)

Defendants Wisconsin Department of Corrections ("the DOC") and Susan Nygren seek summary judgment against the plaintiff, Felicia Brown. Dkt. No. 27. The parties dispute whether the allegations in the complaint rise to the level of actionable conduct for sexual harassment and retaliation claims under Title VII. Dkt. Nos. 31, 47, 50.[1] For the reasons explained below, the court will grant in part and deny in part the defendants' motion for summary judgment.

## I.    FACTUAL BACKGROUND[2]

### A.  **The Plaintiff's Employment at Wisconsin Department of Corrections**

Beginning in May 2009, Guardian HealthStaff, LLC, ("Guardian")[3] placed the plaintiff, Felicia Brown, at the Racine Correctional Institute ("RCI") to

---

[1] The court has jurisdiction pursuant to 28 U.S.C. §1331, because the case involves federal questions under Title VII and 42 U.S.C. §1983.

[2] The parties dispute many of the relevant facts, but the defendants admit some facts solely for the purpose of summary judgment. Dkt. No. 31 at 8 n.2.

1

perform services as a phlebotomist. Dkt. No. 49 at ¶¶4, 7. The plaintiff worked an all-female shift. Dkt. No. 48 at ¶9. As the health services manager at RCI, defendant Susan Nygren (along with Aaisha Shakoor, the health services assistant manager) was responsible for monitoring the plaintiff's performance and attendance. Dkt. No. 49 at ¶¶15-16. The defendants reported any issues concerning the plaintiff's performance to Guardian's staffing consultant, Candy Braatz. Id. at ¶15.

Throughout the plaintiff's time at RCI, the defendants allege that she had issues with attendance. See e.g., id. at ¶¶17, 32, 34. In February 2010, Guardian noted that the plaintiff had fifteen absences. Id. at ¶17. Guardian alleged, but the plaintiff disputes, that it told the plaintiff that if she was absent without a written doctor's note in the next ninety days, she would be placed on attendance probation. Id. at ¶17. While the defendants do not allege that Guardian actually placed the plaintiff on probation in 2010, in August 2010  Nygren did reach out to Braatz about the plaintiff's unacceptable work performance Id. at ¶18. In 2012, Nygren also had at least two discussions with the plaintiff about her attendance, productivity and performance. Id. at ¶32. Nygren also told Braatz that the plaintiff's work was not acceptable. Id. at ¶18. On February 1, 2012, Guardian placed the plaintiff on probation. Id. at ¶19.

---

[3] The complaint alleges that the plaintiff started working at the DOC "through Guardian." Dkt. No. 1 at 3. Guardian's brief in support of its motion for summary judgment stated that "[d]efendant Carleo Co., LLC (f/k/a Guardian HealthStaff, LLC . . .) is a temporary employment/staffing agency that engaged Plaintiff Felicia Brown . . . as a temporary, per diem/contract employee from May of 2009 to June 2015 . . . ." Dkt. No. 33 at 4. On September 7, 2016, the parties filed a stipulation, dismissing Guardian from the case. Dkt. No. 53.

2

Around December 2012, a new warden came in and conveyed his concern about employee attendance issues. Id. at ¶33. At the beginning of 2013, Nygren completed a quality control check evaluation on the plaintiff, indicating poor work, initiative and attendance. Id. at ¶34. The evaluation stated that the plaintiff took nineteen sick days in 2012. Id. In late January 2013, Nygren also expressed to Braatz her desire to terminate the plaintiff. Id. at ¶36. Nygren fired the plaintiff on March 11, 2013. Dkt. No. 48 at ¶21.

B. **The Plaintiff's Allegations of Sexual Harassment**

In contrast to the facts recounted by the defendants, the plaintiff alleges that she followed policy for requesting time off work and that her attendance and productivity were on par or better than that of other employees. Id. at ¶28. She argues that she was fired because of her sex and in retaliation for reporting Nygren's behavior. See Dkt No. 1. The plaintiff alleges that Nygren began sexually harassing her at the end of 2010. Dkt. No. 48 at ¶6. She asserts that sometime in December 2010, Nygren kissed the plaintiff on the mouth, and the plaintiff reported it to Braatz. Id. at ¶¶6-7. The plaintiff alleges that during 2011, Nygren made sexual remarks directed at (although not said directly to) the plaintiff on a daily basis concerning her preferences for dating married people, anal sex and sex toys. Id. at ¶9. For example, the plaintiff alleges that early in 2011, Nygren came into the kitchen and said that it smelled like "pussy." Id. at ¶11. The plaintiff alleges that she verbally reported some of these comments to the assistant manager, Shakoor. Id. at ¶9. She

3

asserts that she was placed on attendance probation as a result of her complaints to Braatz and Shakoor. Id. at ¶26.

The plaintiff contends that despite her reporting Nygren's behavior to Braatz and Shakoor, the harassment continued. See e.g., id. at ¶¶12, 14; but see id. at ¶14 (disputing whether the behavior stopped after Braatz spoke with Nygren). In October 2012, the plaintiff states that one of Nygren's friends slapped the plaintiff's butt and said "hot damn" in front of Nygren. Id. at ¶12.[4] The plaintiff says that she reported this incident to Shakoor and Braatz. Id. Shakoor then took leave at the end of October 2012, and did not return until after the plaintiff's termination. Id. at ¶22. Sometime in December 2012 (the parties dispute the timing), Nygren kissed the plaintiff on the forehead. Id. at ¶14. The plaintiff alleges that Nygren then exposed her own bra and breasts to the plaintiff. Id. In response to the plaintiff asking her why she continued to kiss the plaintiff, Nygren said that the plaintiff was cute, and said that "if [the plaintiff and Nygren] were partners, [Nygren] could put [the plaintiff] on [Nygren's] health insurance." Id. The plaintiff reported this incident to Braatz. Id. at ¶17. The plaintiff contends that a month later, in January 2013, Nygren gave the plaintiff a bad quality control evaluation, dkt. no. 49 at ¶34, and indicated that she wanted to terminate the plaintiff, id. at ¶36. Shortly after, another friend of Nygren's asked the plaintiff if she wanted to buy a "cum" rag. Dkt. No. 48 at ¶18. The plaintiff alleges that enduring these physical and verbal occurrences throughout her time at RCI caused her great emotional

---

[4] Nygren disputes seeing this incident. Id.

stress, and even began to affect her work, because while drawing an inmate's blood, the plaintiff would tense up if Nygren walked by (in fear of another physical altercation). Id. at ¶¶16, 19.

The defendants terminated the plaintiff on March 11, 2013, and she filed an EEOC charge on March 21, 2013. Id. at ¶¶21, 29. The office of Diversity and Employee Services subsequently began investigating allegations of Nygren's sexual assaults on employees. Id. at ¶32.

## C. **The Commencement of Litigation**

The plaintiff filed her complaint on July 13, 2015. Dkt. No. 1. She alleged four causes of action. Id. Count I alleges that the DOC engaged in employment discrimination based on sex, in violation of Title VII, 42 U.S.C. §2000(e) et seq. Id. at ¶¶27-32. Count II seeks a declaratory judgment that the DOC engaged in unlawful employment practices in violation of Title VII. Id. at ¶36. Count III alleges that the DOC engaged in retaliation in violation of Title VII. Id. at ¶¶37-40. Count IV alleges that Nygren violated the plaintiff's Fourteenth Amendment right to equal protection, in violation of 42 U.S.C. §1983. Id. at ¶¶41-44. In her prayer for relief, the plaintiff seeks, among other things, back pay, front pay, compensatory damages, punitive damages, pre- and post-judgment interest, and reimbursements for benefits and expenses. Id. at page 11.

On June 15, 2016, Nygren and the DOC filed this motion for summary judgment. Dkt. No. 27. The parties have fully briefed the motion. Dkt. Nos. 31, 47, 50. The court will grant summary judgment in favor of the DOC on Count I,

5

and in favor of Nygren in her official capacity on Count IV. The court will deny the DOC's motion for summary judgment on Counts II and III, and allow Count IV to proceed to trial against Nygren in her personal capacity.

## II.   SUMMARY JUDGMENT STANDARD

A court must grant summary judgment when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "facts that might affect the outcome of the suit under the governing law," and a dispute about a material fact is genuine if a reasonable jury could find in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When determining whether summary judgment is appropriate, the court views all facts and draws all reasonable inferences in favor of the nonmoving party. Herzog v. Graphic Packaging Int'l, Inc., 742 F.3d 802, 806 (7th Cir. 2014). Nevertheless, "inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." Id. at 806 (quoting Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc., 517 F.3d 470, 473 (7th Cir. 2008)). "[A] party will be successful in opposing summary judgment only when that party presents definite, competent evidence to rebut the motion." EEOC v. Sears, Roebuck & Co., 233 F.3d 432, 437 (7th Cir. 2000)(quoting Smith v. Severn, 129 F.3d 419, 427 (7th Cir. 1997)). The opposing party cannot simply rely on allegations or denials in its pleadings; it must also "introduce affidavits or other evidence setting forth specific facts showing a genuine issue for trial." Anders v. Waste Mgm't of Wis., 463 F.3d 670, 675 (7th Cir. 2006).

6

Thus, a court appropriately grants summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III. DISCUSSION

The defendants' brief in support of the summary judgment motion raises four issues. Dkt. No. 31. First, the defendants argue that the plaintiff cannot sustain her hostile work environment claims, because any unwelcome conduct was not severe, was not pervasive, and was not the result of her sex. Id. at 2. Second, they argue that the plaintiff cannot prevail on her retaliation and disparate treatment claims, because she cannot show a causal connection between her dismissal and her sex. Id. Third, they argue that Count IV, to the extent that it asserts a claim against Nygren in her official capacity, is barred by the Eleventh Amendment. Id. at 3. Finally, they argue that under federal law, government agencies are not liable for punitive damages under Title VII. Id.

The plaintiff does not dispute two of these arguments. In her brief in opposition to the motion for summary judgment, the plaintiff stated,

> [The plaintiff] filed her law suit against Nygren in both her individual capacity and her official capacity. While the Eleventh Amendment may bar suits in federal court brought by private parties against state officers in their official capacities seeking forms of relief other than prospective, [the plaintiff] is still entitled to monetary and punitive damages for her 42 U.S.C. § 1983 claim against Nygren in her individual capacity.

7

Dkt. No. 47 at 28. Given this, the court will grant summary judgment in favor of Nygren on Count IV to the extent that Count IV asserts a claim against Nygren in her official capacity.[5]

Nowhere in her opposition brief does the plaintiff address the defendants' final claim—that the DOC is not liable for punitive damages under Title VII. Perhaps this is because 42 U.S.C. §1981a(b)(1) specifically states, "A complaining party may recover punitive damages under this section against a respondent (*other than a government, government agency or political subdivision*) if the complaining party demonstrates that the respondent engaged in a discriminatory practice . . . ." (Emphasis added). Because the statute expressly prohibits recovery of punitive damages from a government agency, and because the plaintiff failed to respond to the defendants' argument to that effect, see Bonte v. U.S. Bank, N.A., 624 F.3d 461, 466 (7th Cir. 2010) (holding failure to respond to an argument results in waiver), the court will grant summary judgment in favor of the DOC as to the plaintiff's punitive damages claim.

The issues in dispute, then, are (1) whether, as a matter of law, the plaintiff can sustain a claim that the defendants discriminated against her based on her sex (Count I); and (2) whether there is a genuine dispute as to

---

[5] Because the defendants sought summary judgment on Count IV only to the extent that that count alleged an official-capacity claim against Nygren, dkt. no. 31 at 24-26, the court will allow the plaintiff to proceed on this claim against Nygren in her personal capacity. See also Dkt. No. 50 at 13.

8

material facts relating to the plaintiff's retaliation claim (Count III).[6] Dkt. No. 31 at 2. The court finds that, as a matter of law, the plaintiff cannot sustain her claim that the DOC discriminated against her based on her sex, but that genuine factual disputes exist with regard to her retaliation claim.

### A. <u>As a Matter of Law, the Plaintiff Cannot Prevail on Her Claim that the DOC Discriminated Against Her on the Basis of Sex.</u>

Count I of the complaint alleges that the DOC violated Title VII by "[s]ubjecting Plaintiff to different terms and conditions of employment, levels of scrutiny, and discipline because of her sex (female.)" Dkt. No. 1 at ¶30. It further claims that the DOC subjected her "to sexual harassment as well as unwanted, hostile, and abusive employment conditions because of her sex (female)." <u>Id.</u> It also asserts that the DOC failed "to take appropriate action to stop the harassment," and that it terminated her employment because of her sex. <u>Id.</u>

1. *Hostile Work Environment Claims*

The first three claims are hostile work environment claims. To prevail on a claim alleging a hostile work environment, the plaintiff must prove four elements: (1) that her work environment was both objectively and subjectively offensive; (2) that the harassment was based on her sex; (3) that the conduct was either severe or pervasive; and (4) that there is a basis for employer liability. <u>Milligan v. Bd. of Trs. of S. Ill. Univ.</u>, 686 F.3d 378, 383 (7th Cir. 2012)

---

[6] Count II argues that the plaintiff does not have an adequate remedy at law, or a remedy that would prevent future injury to others, for the alleged violations of Title VII, and thus seeks declaratory judgment. Dkt. No. 1 at 8. If, therefore, the court finds that the claims raised in Counts I or III survive summary judgment, Count II also must survive summary judgment.

9

(citing Vance v. Ball State Univ., 646 F.3d 461, 469 (7th Cir. 2011)). Even accepting as true all of the plaintiff's allegations as to the first and third elements, as a matter of law, the plaintiff has not alleged sufficient facts to support the second element.

The plaintiff alleges that she was "subjected to unwelcome sexual harassment because of her sex." Dkt. No. 47 at 9. In support of this claim, she argues that, while Nygren kissed her on the mouth, the plaintiff never saw Nygren kiss any male employees on the mouth. Id. at 10. She argues that Nygren "made numerous sexually related comments to [the plaintiff] in her presence," and that she never saw Nygren make such comments to male employee. Id. She states, "There were no male employees present when Nygren made the sexually related comment, 'It smells like pussy' and [the plaintiff] believes it was related to her sex." Id. She says that while Debra Nutting slapped her on the buttocks, the plaintiff never witnessed Nutting slapping any male employees on the buttocks. She relates that Nygren kissed her on the forehead, told her it was because she was "so darn cute," and told her that if the plaintiff and Nygren were partners Nygren could put the plaintiff on her health insurance, as well as the fact that Nygren lifted her shirt so that the plaintiff could see Nygren's bra and breasts; again, she argues that she never witnessed Nygren do any of this with male employees. Id. Finally, she says that Lisa Baker asked if the plaintiff wanted to buy rags that had the word "cum" written on them, and that she never saw Baker make similar comments to male employees. Id. All of this, the plaintiff argues, "exhibited a significant anti-

female animus demonstrated by gender-derogatory words, such as 'pussy,' and gender-specific words, such as 'partner.'" Id.[7] She argues that because the defendants presented no evidence that Nygren engaged in the same behaviors with male employees, a jury would be permitted to infer that the unwelcome treatment was based on sex. Id. at 11.

At least two of the incidents the plaintiff describes involved the use of an arguably gender-specific term ("cum") or a gender-derogatory word ("pussy"). The Seventh Circuit, and many other courts, have acknowledged that "the use of sexually degrading, gender-specific epithets, such as 'slut, . . . 'whore,' and 'bitch'" constitutes harassment. Passananti v. Cook Cnty, 689 F.3d 655, 665 (7th Cir. 2012) (quoting Forrest v. Brinker Int'l Payroll Co., 511 F.3d 225, 229-30 (1st Cir. 2007), and citing numerous cases)). But use of a gender-derogatory word or phrase is not necessarily harassment "because of sex" in every context. Id. at 666. "As with so many other things, when gender-specific language is used in the workplace, these cases and others recognize that context is key." Id.

So the court must look to the context in which these actions took place—not just the use of the gender-specific or gender derogatory language, but also the unwanted kissing, slapping, showing of body parts, and references to sexual relationships. The court must "proceed with '[c]ommon sense, and an appropriate sensitivity' to that context to distinguish between general vulgarity and discriminatory language 'which a reasonable person in the plaintiff's

---

[7] The defendants disagree with the characterization of some of these events, and dispute that others occurred. See generally, Dkt. No. 49.

position would find severely hostile or abusive.'" Id. (quoting Oncale v.

Sundowner Offshore Servs., Inc., 523 U.S. 75, 82 (1998)).

The plaintiff worked on an all-female shift. The DOC employees who

subjected her to the unwelcome comments and behaviors all were women—

Susan Nygren, Debra Nutting and Lisa Baker. The evidence before the court

contains no references to the presence of men during any of these incidents.

The Supreme Court addressed the issue of same-sex harassment in its 1988

decision in Oncale v. Sundowner Offshore Services, Inc. Writing for the

majority, Justice Scalia explained:

> Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex. The same chain of inference would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual. But harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace. A same-sex harassment plaintiff may also, of course, offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace. Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "*discrimina[tion]* . . . because of . . . sex."

Oncale, 523 U.S. at 80-81 (1998).

Making a determination regarding whether a plaintiff was subject to discrimination for same-sex harassment, Justice Scalia said, requires "careful attention to the requirements of the statute." Id. at 80.

> Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at "discrimina[tion] . . . because of . . . sex." We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations. "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Harris [v. Forklift Systems, Inc., 510 U.S. 17,] at 25 [(1993)] . . . .

Id.

In the plaintiff's case, the question is whether the incidents the plaintiff describes, taking place in an all-female work environment, demonstrate that because she was a woman, she was exposed to different working conditions than were men. The plaintiff asserts that these words and behaviors *did* constitute such discrimination. She argues that Nygren's conduct exhibited a significant anti-female animus, demonstrated by gender-derogatory words, such as "pussy," and gender-specific words, such as "partner." Dkt. No. 47 at 10.

The evidence does not support the plaintiff's claim that she was exposed to the unwelcome words and behaviors because she was female, or that the alleged offenders treated her differently than they treated males. On this record, there is no way to tell whether the DOC or its employees (including Nygren) treated the plaintiff differently than they treated men, because there is

13

no evidence at all of how they treated men. There were no men on the shifts the plaintiff worked. While the plaintiff argues that she never saw Nygren or the others behave toward or around men the way they behaved toward her or around her, she wouldn't have seen them behave in *any* way toward or around men, given that there were none on her shift.

The plaintiff argues that the defendant "cannot and has not presented any evidence that Nygren treated her male colleagues or direct reports in a similarly derogatory and harassing way as she treated [the plaintiff]—which permits a jury to infer that Nygren's harassment of [the plaintiff] was based on her sex." Id. This argument assumes that the *defendant* carries the burden of showing that the plaintiff was not exposed to these behaviors because of her sex. This assumption is incorrect. The plaintiff bears the burden of proving a the elements of a hostile work environment claim. See, e.g., Seventh Circuit Pattern Civil Jury Instruction No. 3.04 ("To succeed on [a Title VII harassment claim], Plaintiff must prove seven things by a preponderance of the evidence . . . .").

Accepting, for the purposes of this motion, that the work environment the plaintiff describes was offensive, and that the offensive environment was severe or pervasive, the plaintiff has not alleged facts demonstrating that the behaviors were because of her sex. The behaviors the plaintiff describes can be characterized as crude, explicit and unwanted—and thus, offensive to the plaintiff—but the plaintiff does not explain how they are specifically offensive or degrading to women. Title VII is meant to target wrongful conduct motivated by

14

sex/gender, not to police general conduct in workplaces. Holman v. Indiana, 211 F.3d 399, 403 (7th Cir. 2000) ("Both before and after Oncale, we have noted that because Title VII is premised on eliminating *discrimination,* inappropriate conduct that is inflicted on both sexes, or is inflicted regardless of sex, is outside the statute's ambit.") While the behavior was related to sexual activity, the Supreme Court made clear in Oncale that harassment is not "automatically discrimination because of sex merely because the words used have sexual content or connotations." Oncale, 523 U.S. at 80.[8]

### 2. *Termination Claim*

The plaintiff also argues in Count I that the plaintiff terminated her employment because of her sex. Dkt. No. 1 at 8. Again, the plaintiff carries the burden of proof. See, e.g., Seventh Circuit Pattern Civil Jury Instruction No. 3.01. To do so, she must provide evidence that "(1) she is a member of a protected class, (2) her job performance met [the employer's] legitimate expectations, (3) she suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff." Id. (quoting Burks v. Wis. Dep't of Transp., 464 F.3d 744, 750-51 (7th Cir. 2006).

---

[8] The plaintiff did not argue that the fact that Nygren kissed her, told her she was "so darn cute," or made a comment about what would happen if the two were "partners," constituted unwanted sexual advances. The court can only speculate that this decision may have been prompted by the plaintiff's contradictory admissions in her deposition regarding Nygren's intent. See e.g. dkt. no. 30-1 at 36:14-19; 56:11-19; 59:8-11; 79:24-80:1; 85:5-15; 91:18-25; 92:1-3. Nevertheless, the plaintiff has waived this argument by failing to raise it. See Bonte, 624 F.3d at 466.

15

It is undisputed that the plaintiff is a member of a protected class (she is female). It is also undisputed that she suffered an adverse employment action (she was terminated). The parties disagree regarding whether the plaintiff's job performance met the DOC's legitimate expectations. But, for the same reasons discussed in the hostile work environment discussion above, the court concludes that the plaintiff has not produced evidence showing that there was another similarly situated individual, not in the protected class, who was treated more favorably than she was. The plaintiff has not demonstrated that there were similarly-situated men who were not fired. Absent this evidence, the plaintiff cannot satisfy the fourth prong of the *prima facie* case for discriminatory termination (disparate treatment).

The defendants also argue that the plaintiff's disparate treatment claim must fail because she abandoned it. Dkt. No. 50 at 9. The court agrees that the plaintiff made no argument in support of this claim in her brief in opposition to the summary judgment motion.

Because the court finds that the plaintiff has not provided sufficient proof that the alleged hostile work environment or termination was because of her sex, and because the plaintiff did not argue against summary judgment on the disparate treatment claim, the court will grant summary judgment in favor of the defendants on Count I, and will dismiss that count.

### B. **The Plaintiff Provided Enough Evidence of Causation to Proceed to Trial on Her Retaliation Claim.**

In Count III, the plaintiff claims that the DOC discriminated against her by "subjecting her to increased scrutiny and singling her out for selective and

16

unwarranted discipline." Dkt. No. 1 at ¶38. She also alleges that the defendant "ultimately terminated Plaintiff's employment in retaliation for Plaintiff exercising her rights to complain about the illegal employment practices of [the DOC], specifically, discrimination based on sex . . . ." Id.

In the defendants' response to the plaintiff's responses to their proposed findings of fact, the defendants assert that in February of 2010, Guardian observed that the plaintiff had fifteen absences, and told her that if she were absent again in the next ninety days without a doctor's excuse, "she would be put on a 90 day written attendance probation." Dkt. No. 49 at ¶17. They indicate that six months later, in August 2010, Nygren notified Braatz that the plaintiff's work was "unacceptable," and that the plaintiff continued to miss work. Id. at ¶18. They assert that the plaintiff continued to miss work, so Guardian put her on probation. Id. at ¶19. In total, they indicate that the plaintiff was absent nineteen times in 2012, and provided no medical slip for any absences. Id. at ¶28.

The defendants also stated that between July and December 2012, "Nygren noticed the number of patients Brown was seeing had dropped to an average of 15 patients per 8-hour shift. She should have been seeing 30-45 patients per shift." Id.at ¶23. They asserted that she was "no longer assisting with copying and filing labs," id. at ¶24, and that she was "frequently reading news on the computer instead of completing her assigned duties," id. at ¶25. They alleged that as a result, "the lab was behind on blood draws and [the plaintiff] was no longer keeping pace." Id. at ¶26. In short, they indicate that

the plaintiff was terminated "due to her low production, poor attendance, and inability to get along with staff." Id. at ¶37.

"Title VII forbids an employer from discriminating against an employee who 'opposed any practice' prohibited by Title VII or who 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" Milligan, 686 F.3d at 388 (quoting 52 U.S.C. §2000e-3(a). To avoid summary judgment on a retaliation claim, a plaintiff may use either the direct or indirect method of proof. Id. The plaintiff chose to use the direct method. Dkt. No. 47 at 21. Under that method, the plaintiff must present evidence "of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." Milligan, 686 F.3d at 388 (quoting Turner v. The Saloon, Ltd., 595 F.3d 679, 687-88 (7th Cir. 2010)).

In their reply brief in support of summary judgment, the defendants argue that the plaintiff cannot meet her burden of proof on the causation prong of the test. Dkt. No. 50 at 10. A plaintiff may establish causation by showing that her complaints "were a substantial or motivating factor" in a defendant's decision to terminate her. Milligan, 686 F.3d at 388 (citing Leitgen v. Franciscan Skemp Healthcare, Inc., 630 F.3d 668, 675 (7th Cir. 2011)). In the absence of direct evidence on causation, "[c]ausation also may be established by presenting a convincing mosaic of circumstantial evidence that would permit the same inference [of retaliation] without the employer's admission."

18

Id. (citing Coleman v. Donahoe, 667 F.3d 835, 860 (7th Cir. 2012)) (citations omitted).

> Such circumstantial evidence may consist of (1) "suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of causation might be drawn," (2) "evidence showing that the employer systematically treated other, similarly situated … employees better," or (3) "evidence that … the employer's justification [for the adverse action was] pretextual." *Silverman v. Bd. of Educ. of City of Chicago,* 637 F.3d 729, 734 (7th Cir.2011) (internal quotation marks omitted); see also *Coleman,* 667 F.3d at 860. The appropriate focus "is not whether the evidence offered is direct or circumstantial but rather whether the evidence points directly to a discriminatory reason for the employer's action." *Atanus v. Perry,* 520 F.3d 662, 671 (7th Cir. 2008) (internal quotation marks omitted); see also *Davis v. Time Warner Cable of Se. Wis., L.P.,* 651 F.3d 664, 672 (7th Cir. 2011).

Id. at 388–89.

It is difficult to determine whether the plaintiff's negative work performance evaluations occurred subsequent to her complaints to Braatz about Nygren's conduct, because many of the dates are in dispute. See e.g. Dkt. No. 48 at ¶14. Despite that, viewing the evidence in the light most favorable to the plaintiff, the court sees a "convincing mosaic" of circumstantial evidence. The plaintiff alleges that Nygren, Nutting and Baker harassed her. She alleges that after these individuals harassed her, she complained to Shakoor and Braatz. Id. at ¶¶9, 12, 17. She alleges that the defendants placed her on attendance probation, then terminated her employment, after she made

19

these complaints. Id. at ¶¶9, 12, 17, 21; Dkt. No. 49 at ¶32. This constitutes evidence of "suspicious timing."

The plaintiff also argues that the defendants' assertions that she was fired because of attendance and poor work performance was pretextual. She presented a declaration from Shakoor[9] disputing that the plaintiff's attendance and work performance were poor enough to warrant her termination. See Dkt. No. 44. The declaration indicates that Shakoor overheard Nygren make sexual remarks to the plaintiff. Id. at 1. Shakoor confirms that she was the plaintiff's direct supervisor from May 2009 through the plaintiff's termination, id., and that the plaintiff had complained to Shakoor about Nygren's kissing the plaintiff and Nutting's having slapped the plaintiff on the buttocks, id. at 2. She also confirms that the plaintiff told her about Nygren showing the plaintiff her bra, and Baker talking about "cum" rags. Id. at 2-3. Shakoor concluded by stating:

> When I returned from my medical leave in the year 2013, I learned that [the plaintiff] was terminated while I was on medical leave. I was shocked. Up until my medical leave at approximately the end of October 2012, I had been [the plaintiff's] supervisor and had been giving her good reviews. I was in charge of the attendance record keeping and had personal knowledge of [the plaintiff's] attendance. [The plaintiff] followed all the rules and properly requested her time off of work. In my opinion, [the plaintiff] did not have any problems with attendance and her attendance should not have warranted her termination.

---

[9] The declaration is docketed as the declaration of "Aaisha Flint." Dkt. No. 44. The first line of the declaration indicates that "Aaisha Flint" formerly was known as "Aaisha Shakoor." Id. at 1.

Id. at 3. Significantly, the defendants terminated the plaintiff while Shakoor—who disputes the allegations of absence and poor performance—was on leave. Dkt. No. 48 at ¶22. This evidence supports the plaintiff's allegations of pretext.

Drawing "all reasonable inferences in favor of the nonmoving party," as this court must do when deciding a motion for summary judgment, Herzog, 742 F.3d at 806 (quoting Ferraro v. Hewlett-Packard Co., 721 F.3d 842, 847 (7th Cir. 2013)),  the court finds that the plaintiff has presented sufficient circumstantial evidence to allow a jury to reasonably conclude that the defendants strategically decided to terminate the plaintiff because of her complaints about sexual harassment, waited until Shakoor was out on medical leave so that she could not contest the decision, and then terminated the plaintiff on the pretext that she was being fired due to absenteeism and poor performance.

The defendants did not present argument on the question of whether the plaintiff had engaged in statutorily protected activity, or on the question of whether they took an adverse employment action against her. Because the plaintiff has raised a genuine dispute as to an issue of material fact—whether the defendants terminated her because she complained about sexual harassment—the court will deny the defendants' motion for summary judgment on Count III (and, as a result, on Count II to the extent that it

requests declaratory relief based on the retaliation claim).

## IV. CONCLUSION

The court **GRANTS IN PART** and **DENIES IN PART** the defendants' motion for summary judgment. Dkt. No. 27. The court **GRANTS** summary judgment on Count I, and on Count IV to the extent that it alleges an equal protection claim against Nygren in her official capacity. The court **DISMISSES** Count I, and **DISMISSES** the official capacity claim in Count IV. The court **DENIES** the motion for summary judgment on the remaining counts, and **ORDERS** that the plaintiff may proceed to trial on Count II to the extent that it seeks declaratory judgment as to the retaliation claim; Count III (the retaliation claim), and Count IV to the extent that it alleges an equal protection claim against defendant Nygren in her individual capacity.

Dated in Milwaukee, Wisconsin this 20th day of September, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge

22